**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

STEVEN W. YOUNG, *et al.*

Plaintiffs,

v.

CITY OF BATON ROUGE, *et al.*

Defendants.

Docket No. 3:19-CV-00886-JWD-SDJ

**OPPOSITION TO DEFENDANT CITY OF BATON ROUGE'S MOTION TO DISMISS**

NOW INTO COURT, through undersigned counsel, comes Plaintiff Steven Young who files this opposition to the Motion to Dismiss (R. Doc. 49) filed by Defendant City of Baton Rouge. For the reasons stated herein, the Motion should be denied in full.

## I. FACTUAL BACKGROUND

This litigation stems from two separate, but related, instances in which Baton Rouge Police Department officers used excessive force in effectuating Plaintiff Steven Young's arrest, including conducting illegal visual cavity searches at the now-infamous BRAVE Cave.[1]

In 2018, Plaintiff was suspected of possessing a single marijuana joint – a nonviolent offense which cannot be the basis for being taking an individual into custody per a Baton Rouge ordinance. Despite this low-level suspected offense, members of BRPD's Street Crimes Unit tackled Plaintiff off his parked motorcycle and beat and tased him into submission. He was then transported to a black site[2] where he was subjected to illegal searches and additional harassment.

[1] *See, e.g.*, Ramon Vargas, *Four Louisiana officers charged in 'Brave Cave' abuse investigation,* The Guardian (Feb. 29, 2023).

[2] "Black site" is a term that refers to a not-publicly-acknowledged government detention facility. *See United States v. Zubaydah*, 595 U.S. 195, 238, 142 S. Ct. 959, 986 (2022) ("After his capture in Pakistan

Then, in 2023, officers arrested Plaintiff after he was allegedly spotted speeding on his motorcycle. Officers tased and beat Plaintiff during the initial stop. They then handcuffed him and continued to deploy the TASER, even <u>after</u> he was secured and subdued. Once Plaintiff provided his name to the officers, they can be heard on bodycam footage chuckling, stating that they knew who he was, and then turning off the bodycam audio as they discussed what to do with him. Officers ultimately transported Plaintiff to the BRAVE Cave where he was again subjected to an illegal visual cavity search and harassment.

In both instances, BRPD officers violated Plaintiff's constitutional rights both in the force used during the initial arrest and in the subsequent searches at black sites.

## II. LEGAL STANDARD

Dismissal under Rule 12(b)(6) is disfavored.[3] When evaluating a motion to dismiss, all well-pleaded facts must be viewed in the light most favorable to the plaintiff.[4] Under Rule 12(b)(6) the complaint and its attachments "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[5] Even if a plaintiff's complaint is found deficient under Rule 12(b)(6), the proper remedy is usually to allow the plaintiff to amend the complaint to cure any deficiencies, rather than dismissal with prejudice.[6]

---

in March 2002, the government transported him to a 'black site' known as Detention Site Green."); *Vergara v. Dal Ponte*, No. 15-cv-02407, 2018 U.S. Dist. LEXIS 15427, at *3 n.2 (N.D. Ill. Jan. 31, 2018) (noting the description of the Chicago Police Department's Homan Square facility "as a 'black site' where the police detain citizens under suspicious circumstances.") It is not clear at this time whether the 2018 arrest involved the BRAVE Cave or another BRPD black site.

[3] *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[4] *Hale v. King*, 642 F.3d 492, 498-99 (5th Cir. 2011) (*en banc*).

[5] *Id., quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Public Health Equip. & Supply Co. v. Clarke Mosquito Control Equip., Inc.*, 410 Fed. Appx. 738, 740 (5th Cir. 2010).

## III. ANALYSIS

A. The motion should be denied because Plaintiff properly requested service within the 90-day period set by Louisiana law.

Defendants first argue that dismissal is required against the City/Parish as they were never properly served with the lawsuit. But this case was in state court until Defendants removed it, and Louisiana law only requires a *request* of service within a specified period of time – which Plaintiff did. Furthermore, Defendants have waived their requested relief through their participation in and removal of the suit.

This case was originally filed on October 24, 2019, in the 19th Judicial District Court for the Parish of East Baton Rouge.[7] Under Louisiana law, "Service of the citation shall be requested on all named defendants within ninety days of commencement of the action" (emphasis added).[8] Plaintiffs requested and attempted to serve the lawsuit on the East Baton Rouge Parish Attorney's Office on the same day that this action was originally filed.[9] Whether or not the Parish Attorney is the proper recipient of the suit, the attempt of service was proper under Louisiana law and is all that is required within the ninety-day period.

But regardless, the service requirement "shall be expressly waived by a defendant unless the defendant files, in accordance with the provisions of Article 928, a declinatory exception of insufficiency of service of process specifically alleging the failure to timely request service of citation."[10] A motion to dismiss is not a proper mechanism for alleging failure to timely request

---

[7] R. Doc. 1-2.
[8] La. Code Civ. Proc. art. 1201(C).
[9] R. Doc. 24-2 at 6.
[10] La. Code Civ. Proc. art. 1201(C).

service of process.[11] For instance, in *Davis v. Caraway*, the plaintiff failed to request service on a police chief within the ninety-day period, as required under La. Code Civ. Proc. Ann. art. 1265, art. 1201(C), and La. Rev. Stat. Ann. § 13:5107(D).[12] But because the police chief did not file a declinatory exception the "motion to dismiss was ineffectual."[13] The same is true here, with regard to the City/Parish.

Further, the City/Parish has subjected itself to the jurisdiction of this court through its filings and active participation in the case. A party can waive service by filing an appearance of record, which "includes filing a pleading, appearing at a hearing, or formally enrolling as counsel of record."[14] Here, the City/Parish has made several appearances of record through filings, including the removal from state court,[15] the motion to stay proceedings,[16] a motion for extension of time to file an answer,[17] a certificate of interested persons,[18] and this motion to dismiss, which includes several substantive arguments beyond the failure to effect service.[19] These each constitute an appearance of record, which waives the service requirement.[20]

---

[11] *Davis v. Caraway*, 113 So. 3d 414, 2013 La. App. LEXIS 602 (La.App. 5 Cir. 2013) ("Service upon a police chief in a suit arising out of his issuance of a block party permit was not requested within 90 days of filing suit as required by La. Code Civ. Proc. Ann. art. 1265 and art. 1201(C) and La. Rev. Stat. Ann. § 13:5107(D); however, the chief failed to comply with art. 1201(C) by filing a declinatory exception. His motion to dismiss was ineffectual to raise the issue of failure to request service within the 90-day window.").

[12] *Id.*

[13] *Id.*

[14] *Perkins v. Carter*, 09-673 ( La. App. 5 Cir 12/29/09), 30 So. 3d 862, 866-67; *Poret v. Billy Ray Bedsole Timber Contractor, Inc*., 31,531, p. 2 (La. App. 2 Cir. [*867] 1/22/99), 729 So.2d 632, 633, *citing*, La. C.C.P. art. 1671; *Glass v. Alton Ochsner Medical Foundation*, 02-0412, p. 12 (La. App. 4 Cir. 11/6/02), 832 So.2d 403, 410.

[15] R. Doc. 1.

[16] R. Doc. 3.

[17] R. Doc. 21.

[18] R. Doc. 22.

[19] R. Doc. 24.

[20] Out of an abundance of caution, and without waiving any arguments herein, Plaintiff Steven Young served Defendants via a private process server on August 29, 2024.

Defendant does not make any argument that the Baton Rouge Police Department Chief of Police has not been properly served,[21] so this case would continue against all non-City/Parish defendants, include Doe Defendants, regardless of the ruling on the present motion.

B. Defendants' motion should be denied because the video contradicts Defendants' description of the facts.

Defendant City/Parish next argues that Plaintiff Steven Young's recitation of facts is contradicted by the video footage and were pled "merely as a way to circumvent the Rule 12(b) barrier only to be met with the same factual weaknesses after discovery."[22] But a review of the video supports Plaintiff's allegations, shows several unlawful uses of force, and contradicts *Defendants'* characterizations.

To prevail on an excessive force claim, a plaintiff must prove "(1) injury (2) which resulted directly from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[23] The Fifth Circuit uses the Fourth Amendment's objective reasonableness standard in evaluating excessive force.[24] The Supreme Court described that analysis as follows:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, … however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *See Tennessee v. Garner*, 471 U.S., at 8-9 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").[25]

[21] R. Doc. 1-2 at 12 (requesting service on then-Chief of Police Murphy Paul).
[22] R. Doc. 24-2 at 10.
[23] *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005); see also *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007).
[24] *Graham v. Conner*, 490 U.S. 386, 388 (1989).
[25] *Id.* at 396 (emphasis added).

In other words, *Graham* requires that the force used be proportional to the threat. When there are distinct moments of excessive force such as tackling a suspect onto the ground and then striking that suspect, each must be analyzed separately.[26]

What is reasonable may also change throughout a single encounter. For instance, it can be reasonable to use force on a noncompliant suspect "but not after that person has begun to comply."[27] "[A] police officer uses excessive force when the officer strikes, punches, or violently slams a suspect who is not resisting arrest."[28] So even if some amount of force could have been justified at the onset of either encounter, force would not be reasonable once Plaintiff began to comply or was otherwise subdued.[29]

Regarding the 2018 arrest, Defendant states that Plaintiff claims that the TASER was deployed when he was already handcuffed, apparently confusing the allegations from the 2018 arrest with those of the 2023 arrest.[30] Defendant also claims that "Young attempts to flee both on his motorcycle and on foot … and is physically resistant and disobedient."[31] This is not what the video shows. Plaintiff can be seen idling on his motorcycle facing a brick wall that is mere inches away from the front tire:

---

[26] Tucker v. City of Shreveport, 998 F.3d 165, 171 (5th Cir. 2021) (concluding that officers tackling a suspect and then punching and kicking him while on the ground "are two distinct moments of force' that must be separately analyzed.").

[27] *Akeeem v. Guillen*, 22-20644 (5th Cir. 2024); see also *Joseph v. Bartlett*, 2020 WL 6817823 (5th Cir. 2020) ("even if Joseph failed to comply and struggled against the officers at certain points throughout the encounter, that resistance did not justify force indefinitely. . . . For an officer's force to be reasonable, it must be commensurate with the suspect's level of contemporaneous, active resistance.").

[28] *Darden v. City of Fort Worth*, 880 F.3d 722, 732 (5th Cir. 2018); *see also Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) (finding that once a suspect is "subdued" and "no longer resisting, an officer's subsequent use
of force is excessive.").

[29] *See id.*

[30] *Id*. at 9; see R. Doc. 18 ("First Amended Complaint") at ¶¶ 23-36.

[31] R. Doc. 24-2 at 9.



[32]

The video shows that Plaintiff does not make any attempt to back the motorcycle out of place or otherwise flee before the officers forcefully throw him on the ground, knocking over a bystander in the process.[33] Subsequent uses of force occur in the context of Plaintiff being actively tased and disoriented, at times begging for help or explaining why he cannot turn over due to a hernia.[34]

Plaintiff was suspected of possessing a marijuana blunt, which is a non-violent offense which, per Baton Rouge ordinance, cannot be the basis for being taken into custody.[35] Therefore, per *Graham* the officers could not initially employ more than an absolute minimum amount of force.[36] Instead, the officers tackled Plaintiff off of his motorcycle and onto the pavement.

---

[32] Fig. 1: Screenshot from R. Doc. 24-3 at 00:43.
[33] R. Doc. 24-3.
[34] *Id.*
[35] Baton Rouge Code of Ord. Sec. 13:966(d) (a suspect alleged to possess a small amount of marijuana "shall not be taken into custody by the arresting officer, but instead shall be required to either deposit his driver's license with the arresting officer or give his written promise to appear.").
[36] *Graham v. Conner*, 490 U.S. 386, 396 (1989).

Subsequent uses of force are arguably a closer call, but still exceeded the threshold from the initial stop.

Defendants also claim – without citation to any allegation or evidence – that a gun was found on Plaintiff's person.[37] Certainly, that is not in Plaintiff's complaint, which is controlling at the 12(b)(6) stage. Regardless, Defendants do not argue that they were aware of any alleged weapon prior to the initial use of force. The "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[38] Whether or not the facts ultimately show that Plaintiff had a weapon, it does not factor into this analysis.

As for the 2023 arrest, Defendants again employed excessive force at several timepoints. Defendants argue that the force was justified due to Plaintiff allegedly speeding and fleeing the police.[39] What Defendants ignore – and what the video makes clear – is that several of the uses of force occurred *after* Plaintiff was handcuffed and compliant.[40] This includes at least one instance where Plaintiff was <u>tased while already handcuffed</u> and in police custody:

---

[37] R. Doc. 49-2 at 9-10.
[38] *Graham v. Connor*, 490 U.S. 386, 396 (1989).
[39] R. Doc. 24-2 at 9.
[40] See, e.g., *Hmeid v. Nelson Coleman Corr. Ctr*., 2018 U.S. Dist. LEXIS 175369, *24 (finding TASER deployment on a non-compliant, but not aggressive, suspect who was "handcuffed and face-down on the ground" could be excessive force).



[41]

The timeline of the TASER deployment, as seen on the body camera footage, is instructive:[42]

- 00:47 – Officer first restrains Plaintiff by kneeling on top of him (while saying "I'll fucking beat the fuck out of you");
- 00:56 – With first officer still restraining (and punching) Plaintiff, second officer deploys TASER for approximately eight seconds;
- 01:06 – With first officer still restraining Plaintiff, second officer deploys TASER a second time for approximately two seconds;
- 01:25 – Second officer heard saying on radio that Plaintiff is "in custody";
- 01:26 – First officer says "Clench your hands again I'm gonna fuck you up again";
- 01:30 – Second officer says "Let him handcuff you or I'm gonna TASE you again";
- 01:32 – Handcuffs applied; second officer says "Thank you";
- 01:52 – Second officer deploys TASER a third time for approximately two seconds.

[41] Fig. 2: Screenshot from R. Doc. 49-6 at 01:53, showing TASER use after handcuffing.
[42] R. Doc. 24-6.

Defendants claim that Plaintiff "demonstrated active resistance by refusing to give his hands for handcuffing and refusing to 'un-ball' himself."[43] But again, the video shows that Plaintiff complied with instructions ("I'm putting my legs out! I'm putting my legs out!") despite those instructions being presented as threats ("Clench your hands again I'm gonna fuck you up again"), but was tased again, anyway.[44]

Further, the Affidavit of Probable Cause does not mention either TASER deployment seen on video including the one after Plaintiff was handcuffed, only two ineffective attempts prior to where the video begins, which could lead to liability for fabrication of evidence.[45]

Defendants' argument essentially boils down to that, because they allege that Plaintiff was generally acting badly, any actions to take him into custody are justified. But that is not how the law works. Instead, each use of force must be analyzed individually to determine whether it was justified. And other justifications like the alleged possession of a crack pipe would not have been known at the time of the use of force and cannot be used as justification.[46] The videos support Plaintiff's position.

a. Defendant's motion should be denied because the well-pleaded facts describe a *Monell* claim against the City/Parish under several theories.

Defendants argue that probable cause existed for both arrests and all searches and therefore the municipality is not liable.[47] However, as Plaintiff explained in his Complaint, the violations were the direct result of Defendants' policies and customs.

[43] R. Doc. 49-2 at 10.
[44] R. Doc. 49-6 at 1:15-2:20.
[45] R. Doc. 24-8 at 6.
[46] *Graham v. Connor*, 490 U.S. 386, 396 (1989).
[47] R. Doc. 24-2 at 10.

To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken "pursuant to an official municipal policy."[48] A plaintiff must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."[49] There are several theories which can lead to *Monell* liability, most relevant here by a) the existence of an express policy[50] (the unconstitutional BRPD search policy), b) improper retention practices[51] (the choice to retain officers despite repeated misconduct and violence), c) improper supervision or discipline[52] (the complete breakdown of accountability at BRPD), d) deficient training[53] (the failure to meaningfully train officers on search practices and constitutional policing), e) a pattern of misconduct[54] (the hundreds or thousands of Baton Rouge citizens abused on the streets and at the law enforcement black sites in a manner similar to Plaintiff); and f) ratification by the final policymaker[55] (the BRPD chief allowing these illegal acts to perpetuate for years under his watch).

First, Defendants are liable for the policy and custom of visual body cavity searching arrestees at black sites like the BRAVE Cave because the searches have no relation to probable cause and were conducted with the knowledge that additional searches would be made to process arrestees like Plaintiff into the jail. "[A]ll courts have recognized the 'severe if not gross interference with a person's privacy' that accompany visual body-cavity searches."[56] "Even when

48 *See Monell*, 436 U.S. at 691.
49 *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).
50 *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 660-61 (1978).
51 *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)); *Gomez v. Galman*, 18 F. 4th 769, 778 (5th Cir. 2021).
52 *Id.*
53 *Id.*
54 *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).
55 *Allen v. Hays*, 21-20337 (5th Cir., March 21, 2023) at *15.
56 *Florence v. Board of Chosen Freeholders of County of Burlington*, 132 S.Ct. 1510, 1527 (2012) (Alito,

carried out in a respectful manner, and even absent any physical touching … such searches are inherently harmful, humiliating, and degrading."[57] "[V]isual body cavity searches must be justified by specific articulable facts supporting reasonable suspicion that an arrestee is secreting contraband inside the body cavity to be searched."[58] Defendants also do not contend that they had a search warrant for any cavity search, which is required "absent an emergency … where intrusions into the human body are concerned."[59]

Defendants' strip search policy, which reads in part that "[s]trip searches may be conducted on non-arrestees based on individualized articulable reasonable suspicious to frisk, probable cause to search, consent, or a court order" explicitly misstates the legal standard for conducting such searches. Indeed, a section of this Court has already found the written Baton Rouge strip search policy to be unconstitutional and enjoined it.[60]

Defendants dismiss the visual body cavity searches as "based in probable cause under the circumstances of each event," but do not articulate how that is the case.[61] Plaintiff does not allege that any initial search to ensure officer safety during the arrest was inherently unlawful. Rather, it is the subsequent searches at the BRAVE Cave (or other black site) which are not supported by probable cause and conducted with the knowledge that Plaintiff would be searched upon processing into the jail that are not allowed.[62] That there have been hundreds if not thousands of

---

J., concurring), citing *Blackburn v. Snow*, 771 F.2d 556, 564 (C.A.1 1985).
[57] *Florence v. Board of Chosen Freeholders of County of Burlington*, 132 S.Ct. 1510, 1527 (2012) (Alito, J., concurring).
[58] *Sloley v. VanBramer*, 945 F.3d 30, 33 (2d Cir. 2019); *Hunter v. Auger*, 672 F.2d 668, 674 (8th Cir. 1982).
[59] *Schmerber v. California*, 384 U.S. 757, 770 (1966); see also *Haliburton v. City of Ferndale*, 653 F.Supp.3d 377, 390 (E.D. Mich. 2023); *Ybarra v. Illinois*, 444 U.S. 85, 96 (1979).
[60] *Lee v. Lawrence*, No. 23-1229-SDD-RLB, 2024 U.S. Dist. LEXIS 122765, at *38 (M.D. La. July 12, 2024) ("General Order No. 281, Section III.C is unconstitutional on its face and must be enjoined.")
[61] R. Doc. 24-2 at 10.
[62] See R. Doc. 18 at ¶¶ 53-55,73, 183-184; see also *Fuller v. M.G. Jewelry*, 950 F.2d 1437 (9th Cir. 1991) (body cavity search requires probable cause and warrant absent exigent circumstances); *McKinley v.*

arrestees subject to this same process is enough to establish a policy or custom.[63] Defendants do not make any argument in support of those searches, or the use of the BRAVE Cave, and therefore claims stemming from either should not be dismissed.

Defendants are also liable under the other *Monell* theories because BRPD has fostered a culture and practice of constitutional abuses and total lack of accountability. Defendants may be liable for the retention of officers who cause constitutional violations where there is "deliberate indifference" to the "known or obvious consequence[s]" of those decisions.[64] Defendants are deliberately indifferent to hiring and retention of officers "where adequate scrutiny of an applicant's background would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to [retain] would be the deprivation of a third party's constitutional rights."[65]

Defendants' liability under these theories are described in Plaintiff's Amended Complaint at too great a length to replicate here, but some specific examples include:

- The use of the "BRAVE Cave" and other black sites over several years to unlawfully search and physically beat thousands of arrestees, including Plaintiff;[66]

- The mismanagement of the now-disbanded Street Crimes Unit;[67]

---

*Trattles*, 732 F.2d 1320 (7th Cir. 1984) (upholding damages for anal cavity search by guard); *Salinas v. Breier*, 695 F.2d 1073 (7th Cir. 1982) (must have probable cause person is hiding controlled substance in cavity).

[63] *Id*. at ¶¶ 75-77.

[64] *Gomez v. Galman*, 18 F. 4th 769, 778 (5th Cir. 2021), citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997).

[65] *Gomez v. Galman*, 18 F. 4th 769, 778 (5th Cir. 2021), citing *Gros v. City of Grand Prairie*, 209 F.3d 431, 433-34 (5th Cir. 2000).

[66] R. Doc. 18 at ¶¶ 75-77, 98-106.

[67] *Id*. at ¶¶ 37-47, 93, 98-137, 160-176.

- The hiring and retention of officers with a known pattern of constitutional violations;[68] and

- The failure to properly supervise officers, including the Street Crimes Unit.[69]

Defendants argue that this systemic pattern of abuse lacks the specificity necessary to establish *Monell* liability.[70] But their argument[71] merely pares off a few, singular examples from Plaintiff's discussion of the breakdown of oversight and accountability at BRPD while ignoring the specific examples of liability discussed throughout the Complaint, including the existence of an unconstitutional search policy,[72] the use of the BRAVE Cave and other black sites;[73] the failure to properly supervise or train the Street Crimes Unit which effectuated Plaintiff's arrest and the use of the BRAVE Cave,[74] specific knowledge of unconstitutional acts at the BRAVE Cave,[75] and BRPD's hiring and retention policies,[76] among other specific allegations throughout the 45-page Amended Complaint. Regardless, the examples cited by Defendants speak directly to the pattern of misconduct and lack of accountability at BRPD, which are elements of Plaintiff's *Monell* claim.

In short, Plaintiff has adequately plead several theories of *Monell* liability and the Motion should be denied.

## B. CONCLUSION

For the reasons stated herein, Defendants' *Motion to Dismiss* should be dismiss with prejudice.

---

[68] *Id*. at ¶¶ 98-137.
[69] *Id*.
[70] R. Doc. 24-2 at 12.
[71] To the extent that Defendants may be arguing that the allegations are too vague or ambiguous to properly defend, the proper remedy would be a Motion for a More Definite Statement per Fed. R. Civ. Proc. 12(e).
[72] R. Doc. 18 at ¶¶ 52-53, 75-77, 210.
[73] *Id*. at ¶¶ 47-56.
[74] *Id*. at ¶ 93.
[75] *Id*. at ¶¶ 75-77; 93.
[76] *Id*. at ¶¶ 110-112.

Respectfully submitted,

*/s/ William Most*
William Most (La. Bar No. 36914)
David Lanser (La. Bar No. 37764)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
T: (504) 509-5023
T: (504) 533-4521
F: (504) 414-6400
Email: williammost@gmail.com
david.lanser@gmail.com